FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 27 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELIZABETH PASTOR,

                       Plaintiff,

-against-

PARTNERSHIP FOR CHILDREN'S RIGHTS,

                       Defendants.
------------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-cv-5167 (CBA) (LB)

**AMON, Chief United States District Judge.**

Elizabeth Pastor, proceeding pro se, brings this action against her former employer, Partnership for Children's Rights ("Partnership"), alleging violations of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* She alleges that she was repeatedly discriminated against on the basis of her race.

The Partnership moved to dismiss the complaint on the ground that it was not an "employer" within the meaning of either Title VII or the ADA because it had less than fifteen employees during the time period of the alleged discrimination. In a Memorandum & Order dated August 15, 2011 ("August 15 Order"), the Court converted the Partnership's motion to dismiss into a motion for summary judgment and directed the parties to conduct limited discovery on the question of whether the Partnership is a covered employer within the meaning of Title VII and the ADA. See Docket Entry No. 25. The parties completed the limited discovery and filed supplemental briefing on February 3, 2012. For the following reasons, the Court now grants the Partnership's motion for summary judgment.[1]

---

[1] A district court may grant summary judgment if the evidence shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1

# DISCUSSION

The facts of this case and the plaintiff's allegations of discrimination are set forth in the Court's August 15 Order, with which this Court assumes familiarity. The only issue before this Court is whether the Partnership is an "employer" within the meaning of Title VII or the ADA. An organization is only an "employer" covered by these statutes if it "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); §12111(5)(a). The "current year" refers to the year in which the alleged discriminatory act took place. See Feliciano v. 131st Block Ass'n Inc., 468 F. App'x 41, 43 (2d Cir. 2012). The complaint described allegedly discriminatory acts that took place in 2008 and 2009, and thus the Court must assess whether the Partnership had fifteen or more employees in 2007, 2008, and 2009.

From 2007-2009, the following types of staff members worked for the Partnership: (1) paid employees; (2) volunteer attorneys; (3) volunteer social workers; (4) law school and social work graduate school interns; and (5) one independent contractor. The Partnership's payroll records confirm, and the parties do not dispute, that the Partnership had at least 8 paid employees in 2007, 11 paid employees in 2008, and 10 paid employees in 2009. (Silverblatt Aff. ¶¶ 9-26.) The parties dispute whether the volunteers, interns, and the independent contractor should also count as employees under Title VII and the ADA.

## I.   Relevant Law

Volunteers and interns constitute employees under Title VII and the ADA only if they receive some kind of direct or indirect financial benefit or promise thereof from an employer. O'Connor v. Davis, 126 F.3d 112, 115-16 (2d Cir. 1997) ("Where no financial benefit is obtained by the purported employee from employer, no 'plausible' employment relationship of any sort can be said to exist because . . . 'compensation . . . is an essential condition to the existence of an employer-employee relationship.'") (quoting Graves v. Women's Prof'l Rodeo

Ass'n., 907 F.2d 71, 74 (8th Cir. 1990)). Financial benefits might be in the form of a salary or wages, or benefits such as medical insurance, retirement pensions, life or disability insurance, vacation time, sick pay, and/or a promise of any of the above. See Pietras v. Bd. of Fire Commn'rs of Farmingville Fire Dist., 180 F.3d 468, 471, 473 (2d Cir. 1999) (holding that district did not clearly err in finding that volunteer firefighter was employee within meaning of Title VII because she received retirement pension, life insurance, death benefits, disability insurance, and medical benefits); O'Connor, 126 F.3d at 116 (holding that plaintiff was not employee within meaning of Title VII because she received none of these benefits). In the absence of traditional compensation, however, "benefits must meet a minimum level of 'significance,' or substantiality, in order to find an employment relationship." York v. Assoc. of Bar of City of N.Y., 286 F.3d 122, 126 (2d Cir. 2002) (quoting Pietras, 180 F.3d at 473). Moreover, the benefits received must primarily benefit the employee, and cannot be merely incidental to the work performed by the employer. See id. (distinguishing medical and insurance benefits from "clerical support and networking opportunities" which "were merely incidental to the administration of the [employer's] programs").

In addition to volunteers and interns, the Partnership employed at least one independent contractor. In determining whether an independent contractor counts as an employee, courts apply common law agency principles and "generally focus on the degree of control exercised by the hiring party over the manner and means of the individual's employment." Quitoriano v. Raff & Becker, LLP, 675 F. Supp. 2d 444, 452 (S.D.N.Y. 2009).

II. **Application**

A. Volunteers

The Partnership's staff included 12 volunteer attorneys in 2007, 14 in 2008, and 13 in 2009. In addition, the Partnership had 3 volunteer social workers in 2007, 4 in 2008, and 4 in 2009. None of the volunteers received compensation for their work, nor did they receive

financial benefits such as health insurance, vacation pay, sick pay, or retirement benefits. (Silverblatt Aff. ¶¶ 28-34.)

The plaintiff argues that the Partnership's volunteer attorneys should nevertheless count as employees because they received many job-related benefits, namely in the form of reimbursement for Continuing Legal Education ("CLE") courses and multiple hours of classes and training in the field of education law. However, these are not the type of substantial job-related benefits that give rise to an employment relationship. As an initial matter, the training programs and classes were directly related to the legal services performed by the Partnership, and are just the type of benefits that are "merely incidental" the administration of the Partnership's work and do not create an employment relationship. York, 286 F.3d at 126. The Court finds that CLE courses are not comparable to retirement benefits or medical insurance, and they do not meet the "minimum level of significant or substantiality" required to elevate these volunteer attorneys to the status of employees. Id.

Additionally, there are no facts in the record that would support a finding that the volunteer social workers, who received no compensation or financial benefits, received any substantial job-related benefits that would make them employees within the meaning of Title VII.

Accordingly, the Court will not count the Partnership's volunteer attorneys or volunteer social workers in assessing whether the Partnership constitutes an "employer" within the meaning of Title VII and the ADA.

B. Interns

During each year between 2007-2009 the Partnership had on staff two law school interns, (Silverblatt Aff. ¶¶ 13, 19, 25), and two social work graduate student interns (id. ¶¶ 14, 20, 26). None of these interns received compensation or benefits. (Id. ¶ 37.) In addition to these unpaid interns, the Partnership employs certain recipients of the NYU School of Law Sinsheimer

4

Service Scholarship, which was established by the founder of the Partnership, Warren Sinsheimer. (Sinsheimer Aff. ¶¶ 3, 11-13.) Recipients of this scholarship receive full tuition as well as an opportunity to work for 1-2 years at the Partnership as a paid employee. (Id. ¶¶ 9, 12-13.) From September 2008-August 2009, Sinsheimer Service Scholarship recipient Dalit Paradis was an employee of the Partnership. (Id. ¶ 14.) From September 2009-August 2010, Sinsheimer Service Scholarship recipient Ellison Ward was an employee of the Partnership. (Id. ¶ 15.) These two scholarship recipients are identified on the Partnership's payroll and were included in this Court's initial count of Partnership employees. (Id. ¶ 13; Silverblatt Aff. ¶¶ 16, 22.)

The plaintiff argues that the Partnership's interns should count as employees. The basis for this argument, however, is that the interns "receive benefits, stipend, college credits, 3 year[s] fully paid tuition, and 2 or 3 years of employment from the Sinsheimer Fellowship." (Pl. Opp. Brief at 3.) This argument appears to confuse the Sinsheimer Service Scholarship recipients, who are included on the Partnership's payroll as employees, with the unpaid law school and social work graduate student interns, who did not receive similar compensation or benefits. To the extent that the interns received school credit or a stipend for their work at the Partnership, such benefits were bestowed not by the Partnership but by the interns' educational institutions. (Silverblatt Aff. ¶ 38.) See O'Connor, 126 F.3d at 116 n.2 ("We reject [plaintiff's] claim that she was compensated to the extent that she received, through Marymount [College], federal work study funding for the hours of volunteer work performed at Rockland [Hospital]. Plainly, it was Marymount-not Rockland-that made these payments to O'Connor."). Accordingly, the additional interns do not count as employees for the purposes of determining whether the Partnership constitutes an "employer" within the meaning of Title VII and the ADA.

C. <u>Board of Directors</u>

The plaintiff argues that the members of the Partnership's Board of Directors, including the founder and president of the Partnership, Mr. Sinsheimer, count as employees. In

determining whether a director is an employee, the Second Circuit considers "(1) whether the director has undertaken traditional employee duties; (2) whether the director was regularly employed by a separate entity; and (3) whether the director reported to someone higher in the hierarchy." E.E.O.C. v. Johnson & Higgins, Inc., 91 F.3d 1529, 1539 (2d Cir. 1996). There are no facts in the record that would support a finding that the members of the Board of Directors, who do not receive any compensation from the Partnership for their services, should count as employees under this test. (Sinsheimer Aff. ¶ 19.)

D. Additional staff members

There are three other individuals who performed in some capacity for the Partnership during the period from 2007-2009 who do not fall into the categories already discussed: (1) Mary Boyle, a former secretary of Mr. Sinsheimer, who occasionally visits the Partnership to assist Mr. Sinsheimer with organizing his files (Silverblatt Aff. ¶¶ 48-49); (2) Emily Sherwood, who works as a volunteer for the Partnership as the Director of Development and Public Relations (Id. ¶ 43.); and (3) Lauren Whitman, who initially worked for the Partnership as a volunteer but later worked on an hourly basis as an independent contractor at some point in or around 2007. (Id. ¶ 40-41.) The Court need not decide whether these three individuals constitute employees of the Partnership under the ADA and Title VII. Even if all three of these individuals were employees of the Partnership, which seems unlikely on this record, the Partnership would have had at most 11 employees in 2007, 14 employees in 2008, and 13 employees in 2009. Thus, even assuming all three individuals were employees, the Partnership was not an "employer" within the meaning of the ADA and Title VII at the time of the alleged discrimination.[2]

---

[2] The plaintiff also argues that the "Partnership is intertwined with the University of NYU and ADP Sources ADP to carry out our Health Benefits . . . . Those are employees." (Pl. Opp. Br. at 4.) The plaintiff does not explain how the Partnership is "intertwined" with these organizations, and there are no facts in the record that would support a finding that the companies are joint employers, nor is there any basis to aggregate the employees of those entities with the Partnership's employees for the purposes of determining whether the Title VII and ADA employee threshold is satisfied. See, e.g., NLRB v. Solid Waste Servs., 38 F.3d 93, 94 (2d Cir. 1994) (explaining that relevant factors for assessing joint

## CONCLUSION

The Partnership for Children's Rights was not an "employer" within the meaning of Title VII or the ADA at the time of the discriminatory acts alleged in the plaintiff's complaint. Accordingly, the defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
       September 27, 2012

S/Chief Judge Amon

_____
Carol Bagley Amon
Chief United States District Judge

---

employment may include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision").